Thank you. May it please the Court, Your Honors. My name is Al Broussass. I represent Mr. Davis. Mr. Davis' appeal from the grant of a summary judgment is limited to the grant of the summary judgment in favor of Officer Miller. This appeal seeks a reversal of the District Court's decision regarding the first and eighth causes of action and a remand to have those causes of action tried before the jury. The first cause of action alleged the use of excessive force in derogation of the Fourth Amendment. The eighth cause of action alleged a state law claim of battery. The District Court, after reviewing multiple exhibits, oppositions, countermotions, cross motions, based its decision on the doctrine of qualified immunity as to the first cause of action and as to the State Discretionary Act exception on the eighth cause of action. In any analysis involving the use of excessive force, especially qualified immunity, we have to first see whether there was a constitutional violation. And sometimes there's an overlap over the – between the analysis of whether or not there's a constitutional violation or whether there's use of excessive force. Whether we discuss that excessive force as deadly or non-deadly is not necessarily germane. The fact remains that any excessive force in violation of the Fourth Amendment is a constitutional violation. When an officer uses more force than is reasonable to be employed under the circumstances, there is a constitutional violation. Graham v. Connor provides us the framework for determining whether or not there's been the use of excessive force in an – that was a constitutional violation. The first analysis, the first step, although not necessarily the most important one, is the severity of the crime. Mr. Davis, in this particular case, was stopped by casino personnel, whether it's under a vagrancy statute, trespassing statute, or otherwise. That crime would have been a misdemeanor. He was ultimately arrested for obstructing a police officer, which in Nevada, if you do not use deadly force or if you're not armed, is likewise a misdemeanor. So when we look at the severity of the crime that he was potentially going to be charged with and the crime that he was actually charged with, we're looking at a misdemeanor. And the question here is whether, in light of that particular crime, the officer's use of force to effectuate the arrest was reasonable. The second prong of the Graham test is whether Mr. Davis posed an immediate threat to the safety of the officer and others. And I believe that's the more important one. There's a videotape that was presented to the Court below. There's a transcript. Nowhere in that videotape, at least in a portion where Mr. Davis is in the security holding pact, is there any indication that Mr. Davis posed an immediate threat to the safety of the officer and anyone else. He was handcuffed. He was not grabbing the officer's gun. As a matter of fact, when the officer was conducting a pat-down search, he told the internal affairs detectives that he was satisfied that there was no weapon, that he was not in any danger. If he was not ---- And the other part of it, is it possible that there was no reason at the time of the day, and both, or that Officer Miller turned Davis over and punched him in the face? That's correct. But that's later on. While he was in the security holding tank. All right. But let's just take that part. Would that not in itself, if it were true, would that not be excessive force? Yes, it would be. That there was no reason at that point. And that fact is disputed? That fact, yes. It is disputed by the Mr. Miller, by Officer Miller's counsel. If those were the facts, would there be qualified immunity to turn him over and punch him in his face? No. No. There would be no qualified immunity. Your theory, I gather, is that this summary judgment is inappropriate because ---- The reason the summary judgment was inappropriate is because when you take the facts in the likemost favorable to the nonmoving party, and you have Mr. Deen's testimony, Mr. Davis's testimony, then you have to look at that and say, well, did a reasonable officer under those particular circumstances believe that his conduct was constitutionally permissible? And the answer to that is clearly no. And it's supported in the record because internal affairs themselves, excuse me, did not punish or discipline, is the word, discipline the officer for use of that force, for punching him. But let me ask you about the other claim, the State claim, the Battery claim. There is a Nevada statute about immunity for officers engaged in discretionary acts. Yeah. It's the General Immunity Statute, which provides for immunity not only for officers, but any State employees engaged in discretionary acts. The concern I have about the extension of that is that at least the Nevada Supreme Court in their dissent, and Justice Roe, as I believe it was in the Maturi case, he looks at the distinction and says, well, I don't think the majority is right. When you decide to handcuff somebody, that is a discretionary act. When you decide to use the handcuffs in a matter that causes injury, that is not something that should be considered discretionary act. And if I put it in this perspective, when it comes to police officers, it would make no sense that an officer could be considered to have violated the constitutional rights of an individual by using excessive force under Federal law, yet somehow that very conduct is considered discretionary under State law, and he's immune from suit or liability. In effect, taking that argument to its extreme, it is saying that whenever somebody, an officer, decides to use excessive force, which is constitutionally impermissible, he can only be sued under Federal law, but never under State law. I don't think that's the intent between the Nevada Discretionary v. Ministerial Act distinction in allowing immunity.  I'll ask you one other question. Did the trial court then summary judgment? They were counter-summary judgment. You both sought summary judgment. In your summary judgment motion, did you ask for summary judgment on the State claim? Yes. What happened, Mr. Davis filed under seal? What was the reason for that? Your Honor, I was not part of the team at the time, and I reviewed it, and it made no sense to me why they were filed under seal. It's caused a bit of a problem in that we don't have part of the record which we can get, but it's hard enough to find out what happened in these cases without having people file things under seal for no reason I can see. It caused me a problem in working on the brief, Your Honor, as well. I just couldn't see why these things were filed under seal. Did you review the material that was under seal? We had copies, and I reviewed that, and I saw that there was a summary judgment requested by Mr. Davis under the rationale of Yadav v. Simpson, which is a Nevada Supreme Court decision which enforced or affirmed a jury verdict on finding an officer liable for battery when the jury instruction that was given is that an officer may be liable for battery when he uses more force than is reasonably necessary to effect a lawful arrest. So there's precedent before the Nevada Supreme Court that officers are not immune from a battery claim in the event that they use more force than is necessary, which sort of would make sense, because if the force that you're using is constitutionally impermissible, why should you be protected under the, quote, discretionary act immunity under State law? All right. Thank you. Let's hear from your opponent. Good afternoon. My name is Lisa Ciminelli, and I represent Officer David Miller in this litigation. Although I'm going to focus on the qualified immunity issues, because I believe that that's the most significant issue before you today, there were a number of side issues that were raised in the Mr. Davis's appeal that I think I should touch on briefly in turn. All right. Well, let's start with the qualified immunity. How can there be summary judgment if the testimony on the plaintiff's side by two people is that the officer turned him over when he was in handcuffs and punched him in the face and caused injuries? Well, with respect to the punch, first of all, I don't believe that the testimony is that he actually was turned over. The testimony was that he was on the floor, that he continued to struggle. He was kicking and spitting at the officer, and it was at that point that the officer delivered a short jab to Mr. Davis's face. And at that point in time, we have the deposition testimony of Mr. Davis. Well, it doesn't matter what Mr. Davis says at this point. But summary judgment purposes the questions whether there is a dispute of fact. Well, with respect to the qualified immunity, Your Honor, what we would submit to you is that, first and foremost, that when you look at the issue of excessive force, you have to look at under the Graham factors basically everything that's taking place at the time that this punch took place. And in this particular instance, we have to look at the facts. And in the light most favorable, at this stage, in the light most favorable to the plaintiff. Yes, Your Honor. In the light most favorable to the plaintiff, yet at the same time, under the perspective of the police officer in the situation that he's encountering, here we have a situation where he's trying to take Mr. Davis into custody. He's trying to identify Mr. Davis, and Mr. Davis is actively and forcefully resisting him over a period of time. And this punch occurs during this fluid motion from the time that he first begins to search him through the period of time that they end up on the floor, and Mr. Davis continues his resistance. So with respect to the case of Mr. Davis, we have to look at the facts, and we have to look at the facts. And if there's a dispute of fact, you don't get summary judgment. Well, Your Honor, I agree with you, at least with respect to the first prong of the Katz decision, which is whether or not there was excessive force. So, you know, if you know, for the sake of argument, if we're going to say that there are disputed issues of fact as to whether the force is, in fact, excessive, we still have to go to the second prong. The Katz court specifically tells us that we can't just sit back and say there are disputed issues of fact, so we're not going to look at whether, in fact, the officer had a reasonable ---- Wouldn't have known that it was wrong to punch somebody in the face? Absolutely. I mean, that's definitely our position. That's the way they train the police in Nevada. Could he reasonably believe that he acted lawfully by delivering that jab? Absolutely, Your Honor, we believe that he could, because, first of all, they've pointed to no cited cases that put him on notice that under those particular circumstances, this continued active aggravation, this combative resistance that he's encountering, that that would be an inappropriate use of force. But you concede if the subject is immobilized or offering no resistance, then it's a violation of clearly established law for an officer to strike him. If there were no resistance, if he did, I would agree with you wholeheartedly. So why do you think that the resistance is an undisputed issue of fact here? Because Mr. Davis has testified under oath that even then he continued to resist. We also have the benefit of the videotape, which was submitted to the court, that shows him kicking and spitting at Officer Miller while handcuffed on the ground. So the act of resistance, I mean, there's no one, there is no one that's testified that he was no longer resisting. There's no one that's testified that he was offering absolutely no resistance to Officer Miller's lawful attempts to identify him and to take him to jail. So Officer Miller at that point, again, it's almost not unlike the shove in the Katz case, in the sense that, although in hindsight, maybe it was unnecessary, in hindsight, maybe there was something else that he could have done. By the same token, it didn't cause Mr. Davis any injury. It didn't even leave a mark on his face. And Mr. Davis at that point did cease his resistance, and it was only then, after the jab was delivered, that Officer Miller was able to effect the identification that he was trying to make and switch out the handcuffs so that he could take Mr. Davis to jail, which was his objective before the entire struggle, as Mr. Davis describes it in his deposition, took place in the first place. So in this instance, I mean, in particularly focusing on the punch, the Katz court has clearly told us that if the officer could reasonably believe that he acted lawfully, then we have to sort of employ all of those public policy rationale in favor of the police officer. Kennedy, this followed on the Mr. Adjayan, who is, I gather, at least a neutral witness, testified that he first saw Officer Miller throw Davis across a hallway into an elevator door headfirst. Then he saw him turn Davis around and throw him into the wall next to the holding cell. Finally, he witnessed Officer Miller throw Davis into the wall adjacent to the elevator, and that the third time, it left a sizable dent in the wall. That's what preceded the punch in the face. Yes, Your Honor. That is Mr. Adjayan's testimony as to what preceded the punch. And with respect to Mr. Adjayan's testimony, first of all, we have to separate out the consequence of that, which is the injury. I think that counsel, in large part, is trying to work backwards from the fact that we – that he did receive a substantial injury and is trying to say that that in and of itself means that what happened was excessive or that it was unreasonable. Here, what we know happened under the undisputed facts were that Mr. Davis was continuing to resist and was holding and – He says he was cussing. He says he was – the question is, at this point, you start resisting an officer. I can't recall. I was in the heat of the moment. I know I was cussing. I was yelling, cursing, et cetera, et cetera. He got swung around for the second time. Then he goes – then later, he says, I think the part to which you were referring, what were you doing? I was wiggling. I wasn't trying to get away. I believe I kicked out. I was in pain. I was angry. I remember him having my knee in the back. And then I remember him turning me over, saying, stay still, boy. And then he hit me with his fist. That's his testimony with respect to when he was on the floor wiggling and kicking out. Right. Before that, I don't see – you may be able to point it to me. Yes. What I'm looking at is on Excerpts of Record 50, page 81, lines 16 through 21. And I will agree with you that the record is not altogether clear because this was one of those classic deposition moments where he's trying to describe an activity and using his body to describe it. But essentially, what he's talking about is that as Officer Miller is taking him into the hallway, Officer Miller is pushing on him. And he is pulling away from Officer Miller. And that they're sort of engaged in sort of – He says swinging, right? Right. As swinging or struggling, which in large part is governed by his momentum and his body movement in trying to get away from Officer Miller. And again, what we're – and this is all part of the continuum of the activity that took place immediately before in the security office where he is – Frankie Davis actually testifies that they were struggling, that they were engaged in a tussle where one was pulling, the other was pushing, and that this momentum carried itself out into the hallway. But even taking the facts in the light most favorable to Mr. Davis and taking Mr. O'Dayen at his word, the conduct that we have with respect to the hallway is him pushing, slamming, or shoving him into one or more walls. Can we – Three walls. I mean, three times he – Why do you say even taking him? That's what we're supposed to do. Right. We take their testimony, not the police. Correct. You understand that. Even taking that testimony – You don't say even taking it. Taking it. Taking that – taking that testimony at its very worst, is this – is there a case specifically on point that says that under these circumstances with this active resistance You say it has to be specifically on point? It doesn't necessarily – It has to involve pushing against an elevator wall? You think that's what the law is? I don't think that the law requires us to have all of the facts completely squared out. Oh, it doesn't. But I do believe that there has to be enough specificity so that the police officer is clearly on notice that when he engages in that activity, that that activity is in and of itself unlawful. And that activity that he engaged in, again, I will remind the Court, happened in the heat of the moment, so to speak, while he has an actively resisting subject that he is trying to identify who's already under arrest that he can take into custody. So there – they have not cited too many cases that say that under those types of circumstances, which are the active resistance type cases, that this – this would in and of itself be clearly unlawful. The battery of cases that they've cited and the cases from this jurisdiction are vastly different than the scenario that is – is present in this case. Is that really what the district court decided, though? I mean, it appeared to me the district court decided it was an excessive force. No, Your Honor. Actually, the court did not make the determination that it was an excessive force. What he – the way he said it, on one hand, there's no excessive force. On the other hand, there's clearly excessive. This is in the middle, and anything in the middle is subject to qualified immunity. Basically a hybrid of that, where he was saying that once you get – once you find yourself in the, you know, the hazy borders, so to speak, between what is clearly you give the benefit of the doubt or the deference to the police officer. And in this instance, Judge Mahan – Judge Mahan specifically found that this was a case where you were – you were square in the middle and that you did have to give the benefit of the doubt to the officer. All right. Now, let's turn to the State claim. What do you think the law is in Nevada, assuming an officer intentionally assaults a citizen and beats him? Is that a discretionary act for which immunity is provided? If there's – if there's an intentional beating when he's in the performance of his duties? Yes. Yeah. He's arresting somebody, and he says, well, you know, I don't like this person, takes his nightstick and whacks him a few times, breaks his head, you know, without any justification. Is there immunity for that? Well, under – under our current Supreme Court cases, there would be a strong argument that there would, in fact, be immunity for that, because the court is – A strong argument, or that would be the law? I believe that that would be the law under the cases as – as submitted in Nevada at this time. You don't think that the notion of qualified immunity and what might be afforded State immunity are somewhat coextensive? I believe – personally, I believe that they are somewhat coextensive, and I think that the – the public policy behind each of the two, the Federal statute – the qualified immunity and the State statute are that when you get into that gray area where it's – it's not clearly excessive, that's when we want to give the benefit  Well, no, no, I didn't ask about the gray area. I said deliberately, intentionally assaults a citizen in the course of an arrest. He has reason to arrest somebody, and then he decides, well, I think I'll give this guy a few good whacks on the head and break his head a little bit, and does that willfully and maliciously. Is there immunity for that? Unfortunately, the statute only makes a distinction between ministerial acts and discretionary acts, and we certainly couldn't say that his intentional act was a ministerial act. So the only other category that we have under the statute – Sotomayor, what do you say about the Faleen case? The – pardon me? Faleen against GNLV Court. And I'm – and, Your Honor, you'd have to give me some of the details of that case that I've cited. Well, the Nevada Supreme Court says there – a quote from its language. Okay. An abuse of discretion is characterized by an application of unreasonable judgment to a decision within the actor's rightful prerogatives, whereas an act of bad faith has no relation to a rightful prerogative, even if the result is ostensibly within the actor's ambit of authority. They make that distinction, bad faith. That an abuse of discretion would be bad faith? Yes. But was this in an application of the immunity statute? What's that? Was this case done in the context of an application of an immunity statute? Well, I'm telling you what the language of the Supreme Court of Nevada is. Do you know Jordan against State? No, Your Honor, I do not. Well, we'll take care of those cases. Okay. What I would say with that is – and that was one of the issues that I was going to hit in the beginning of my argument, which is that I don't even believe that this – that this argument relating to the battery cause of action is properly before the Court. They did not oppose our summary judgment motion on the basis of the battery cause of action. There was not a – we didn't move for summary judgment, and then they countermoved for summary judgment. They filed their own separate motion for summary judgment. Did you oppose their motion for summary judgment? Yes, we did oppose their motion for summary judgment. And separately from your own – separately from your own motion? No. We opposed it in a separate opposition brief to their motion for summary judgment. All of those motions for summary judgment were separately briefed, and they did not attempt to have the Court, such as in this instance, allow them to take an appeal from the denial of that summary judgment. They offered no opposition to our specific motion for summary judgment. And I would – I would actually – What are you – if they didn't oppose your motion for summary judgment at all? On the basis of any of the State law claims whatsoever. And – Did they oppose the motion at all? They opposed the motion only with respect to the qualified immunity issue. And at oral argument, they did not even address the battery issue at all. So we believe that it's basically inappropriate for them to now come here and try to take the first bite of the apple. Are these things under seal? Their motion for summary judgment was filed under seal because they attached to it a medical report that had been generated by a psychologist relating to their client. And so for whatever reason, they decided to submit that under seal to, I guess, protect his medical privacy, since all of those documents would be considered a public record. But the other documents, the – our opposition and the reply brief that was filed – I mean, their – I mean, our – our – yeah. We're not filed under seal, and those are a part of the Court's record. So what we don't have is the – their motion for summary judgment. Is their – their motion for summary judgment on the – on their – on their battery cause of action, which is not before the Court, since they did not take an appeal from the denial of that motion for summary judgment. No, but the papers are still there. They – for whatever they're worth, we're not – we're not considering a motion for summary judgment on their behalf. We're considering the papers for what they're worth in connection with their position on the case. But what we're saying is, is that, you know, they – they did not file any type of – put up any opposition to the issue of the – of the immunity, the state immunity under Nevada law when we raised that issue before the Court, either through our motion for summary judgment or at the time of oral argument. But you say that they – that they were entitled to relief on their battery claim. Actually, at the – at the time of oral argument, they didn't. No, no, not in their papers. I mean, for summary judgment. Yes. In their separate summary judgment papers, they did argue that they were entitled to – to summary judgment on all of the causes of action against Officer Miller. We – we have fully briefed the issue of the State law battery claim in our – in our brief before you. And aside from the statutory immunity issues, we offered several alternative which we'd also offered at – to Judge Mahan, reasons why the Court could find that we were entitled to summary judgment, including the just common law defenses to battery, including the, you know, the consent to battery. I'd like to ask you one more question on the State claim. Sure. If the police officer was racially motivated, wouldn't that add an extra degree of bad faith? I would – I would definitely agree with you that if there was evidence that the officer was racial – racially motivated, that that would show some level of intent on the part of the police officer. However, that issue has – there is a subtext to that in the pleadings, but that issue was never fleshed out through discovery. And in fact – There isn't any dispute the plaintiff is African-American. There is no dispute that the plaintiff is African-American. There is also no dispute that Officer Miller is – is Caucasian. However, Frankie Davis, in his deposition under oath, was basically backed down from the contentions that were made in his complaint relating to some type of racial motivation. He was asked several times, specifically under oath, whether the officer made those types of comments to him, and he would either say that, you know, he wasn't sure or he didn't remember, or he would say that, you know, perhaps he didn't mean anything by it. And similarly, there is no evidence on the videotape in the security office or in the hallway, which is one of the instances where he says that that statement was made to him, that the officer did in fact say that. So there's – you know, although he – And you think he'd have to show some verbal assault as well as a physical assault to make his case? I – I would hope that – that you could not make a case for racial motivation without some type of evidence to substantiate it, other than the fact that one person is black and the other is white. It could be argued here the savagery of the assault is itself evidence of a racial antipathy. You don't need words if you're going to supply both. Well, Your Honor, I would – I would have to disagree with you – disagree with you on that. But you might disagree with me. I think that a savage attack could occur irrespective of the races that the parties involved. But a jury might agree with that argument. I – I would hope in today's day and age that a reasonable jury would not be able to agree with that argument. Do you think only a verbal assault will count to show racial motivation? I think that there would have to be some specific type of evidence, which is absent in this case, whether it be some type of verbal evidence or some type of, you know, systemic discrimination-type evidence in order for him to make – to have enough of a material issue of fact to put that before the court. That's – that would be my – that would be my take on that – that aspect. Thank you, counsel. Thank you. Briefly, as part of the supplemental record on appeal, Officer Miller's counsel provided what is identified as SCR 13, 14, and 15 pages. That was Mr. Davis's deposition. Mr. Davis in that deposition recalls that through the whole incident that it was the officer that had control over him, not as counsel likes to paint that there was a toggle and there was a struggle back and forth. And at his pages of his deposition on pages 122 and 125, just says that what he recalls is that he's swinging, that he's out of control, the officer is in control. There – under the Fourth Amendment, to say that, without exaggerating or without being overly dramatic, to use an individual's head as a battering ram, as this officer did, under the guise of gaining control, especially when the evidence is conflicting before the judge, it was inappropriate to grant summary judgment. The jury should decide, to that extent, as to the constitutional violation and as to the liability of the officer. Are you asserting at this point that there was a racial basis for the action? Your Honor, the only racial information that we have is when Mr. Davis testifies before he gets the punch, boy, there's a reference to boy. What did he say in his deposition? Did he say he wasn't sure that there had been that reference? He couldn't recall, but that's the only phrase he recalled. I can't tell you, even looking at the videotape and looking at the depositions, whether or not there was a racial animus. That is something that the jury --- Asserting that at this point in the case is my question. Well, I think that's something for the jury to decide. Are you going to present that argument to the jury if you're allowed? Yes. Yes, we would. Once it goes back, what we're asking is for a remand to let the jury decide. I understand. But what Judge Reinhart was asking, is that a claim you're making? We can read the record to see whether the claim is supported, but are you asserting that you're having a racial motivation at this point? At this point, at least on appeal, we're not. I think it's part of the totality of the circumstances. Did I miss the --? Okay. I think that's going to be much of an answer we're going to get. All right. Thank you both very much. Thank you. The case just argued is submitted. Thank you. Thank you.
judges: Reinhardt, Rymer, Thomas